Cake, J.
When the amended bill was filed in this case, and Waller’s heirs were thereby made parties, in order to charge the lands in their hands, they were not bound by any previous order in the cause, but were at full liberty to contest every thing, which might bear upon Waller’s liability for the hire of the slaves in question, and the amount of that liability. They were at liberty, then, to shew, if they could, that the bill of sale of Bright, and the purchase from him by Waller, were fair transactions; for, if fair, Waller was not at all liable for hires. This liberty, however, has not availed them much; for I agree with the chancellor, that we must take both the bills of sale from Byrd to Waller, and from Byrd to Bright, to have been fraudulent and void as to creditors, though as between the parties and those claiming under them, they were valid 5 that from Byrd to Bright being taken as a mortgage. I agree too with the chancellor, that the bill of Anderson is not touched by the statute of limitations, both for the reason he assigned, and for the further reason, that the statute was not pleaded on behalf of Waller the purchaser.
In the argument of the case, the counsel discussed this question: A. purchases slaves of B. the possession not accompanying and following the deed; but A. gets possession under his purchase, before the right of a creditor of B. to come upon the slaves, vests; will such purchase and possession make good the title of A. against the creditor ? The question is a grave one; but it does not arise in this case.
Upon the question, whether the chaucellor estimated the hires correctly ? I cannot find in the record sufficient evidence to satisfy me, that the decree is erroneous. The estimates of hires, when taken, as in this case, after the parties to the transaction are dead, and you can make no deductions for physicians’ bills, and the various other drawbacks which may have existed, are nine times out of ten, I think, fixed by commissioners too high. We must remember too, that the last account was taken expressly to give the heirs (who were then first sought to be charged) an opportunity *736 of contesting as well the true amount of the hires, as their liability to them : as to them the question was to be taken up ah integro. It was decided in Mason’s devisees v. Peter’s adm’r, 1 Munf. 437. that a judgement against executors, is no proof against devisees of land, because there is no privity between them : I presume, there is as little between the executor and the heir. Again, we know that depositions cannot be read against a party who has had no notice of the taking them; and still less against those who, at the time they were taken, were not parties to the suit. Now we see, that all the evidence on which the first report was founded, was taken before the heirs were parties ; and this appearing upon the face of the record, need not be presented in the form of an exception to the account. Upon this new evidence, adduced after Waller’s heirs were made parties, the chancellor was clearly right in his estimate of the hires. But I should not feel authorized to say he was wrong upon the whole evidence.
I do not think we can touch that part of the interlocutory decree, which directs that Mrs. Byrd shall deliver the slaves Sam and Tom to the plaintiff) instead of directing a sale of them; 1. because that was a consent decree; and 2. because it is not before us as to that point, there being no appeal by Mrs. Byrd. Nor does it seem to me, that such sale is necessary, in order to a final decree as to the hires: for the amount of the plaintiff’s claim exceeds the sum total of the profits of the slaves and of the value (upon any possible estimate) of the slaves themselves.
The only error I see in the decree, is the allowance of interest on the estimated hires of the slaves from the date of the first report: interest should be allowed only from the time of the decree.
Cabell, J. concurred.
Tucker, P.
In whatever light we consider Byrd’s bill of sale to Bright, the result, in this case, must be, that the *737 transaction was void as to bona fide creditors of Byrd. If it was a mortgage, it was void, not only because the taking a bill of sale in form, where the real transaction is a mortgage, tends to deceive and injure others, and is therefore fraudulent and void, (6 Johns. C. R. 432. 2 Johns. C. R. 191.) but also for the conclusive reason, that it was not recorded. If it was really an absolute sale, then possession not having accompanied the deed, it was void for that reason. That Byrd remained during life in the undisturbed and uninterrupted possession of the slaves notwithstanding the alleged successive sales to Bright and to Waller, the evidence very clearly establishes.
But it was said that Waller took the possession before the claim of the creditor intervened, and this will protect him against the application of the doctrine of Edwards v. Harben, 2 T. R. 587. And the cases of Bartlett v. Williams, 1 Pickering, 288. and Robinson &fc. v. M’Bonnell &fc. 2 Barn. Aid. 134. were cited. Whether the presumption of fraud would have been removed even if possession had been obtained at a period during Byrd’s life, subsequent to the sale, but anteriour to an execution against him, seems by no means settled with us. The affirmative is very strongly contested by judge Green in Claytor v. Anthony, 6 Rand. 285. 305. and, in the same case, judge Carr waives the expression of any opinion upon the subject. The point cannot be decided here. The possession was not taken till after Byrd’s death. Now, although the delivery of possession in his lifetime, before execution, should prevent the application of the rule, the same effect would not necessarily follow here. According to the class of cases of which Temple v. Chamberlayne, 2 Rand. 384. is one, the creditor has no rights until he has issued his execution. To construe, therefore, a delivery of possession subsequent to the sale, as operating to give validity to the transaction,— as amounting even to a new transaction, to the surrender of the former right, and to a resale with immediate delivery, would not interfere with vested rights. But not so here. *738 According to Blow v. Maynard, 2 Leigh, 29. there was a vested right in the creditor at the death of Byrd, to charge these slaves in equity. This vested right cannot be impaired ^ any act 0f party, who, in the eye of the law, is a fraudulent donee. In the case of Robinson Src. v. M’Don- # J # nell fyc. Bailey, J. expressly confines his opinion to cases in which there is no intervening right in a third person. See his opinion in Mair v. Glennie, 4 Mau. &; Selw. 248. The plaintiff, therefore, as creditor of Byrd, had a right to institute this suit against the holders of the slaves as executors de son tort, and to render them and their profits liable to the discharge of his debt. In doing this, he cannot be turned over by one to another, upon the allegation, that, though one received the profits, he has paid them over to the other. All are equally without right, and it can be no exemption to one who has received my money, to shew, that he paid it over to another, who claimed it, but who had no right to it. Waller’s estate was, therefore, liable for the hires received by him.
I incline to think, that the estimate of the hires charged to Waller’s estate, which was approved and allowed by the court of chancery, was too low: but as the other judges are of a different opinion, I readily yield my objection to the decree on this score.
There is a formal error also in the decretal order directing the slaves Sam and Tom, to be delivered up to the complainant, instead of providing for the sale of them. But for the reasons given by judge Carr, I think the error immaterial as it respects the appellants.
The statute of limitations was relied on in the argument; but it was not pleaded by Shields as a defence for Waller’s estate, even if it had not been explicitly answered by the remarks of the chancellor in the first decree. Shields is, in effect, the only party appellant here : though the appeal was allowed to all, yet as no appeal bond was,given, or indeed required, it can only be considered as the appeal of that party (namely, Shields, the administrator) of whom fin appeal bond could not be required.
*739 It was contended, that Waller should be considered as a creditor for the amount of his advances, and be paid pro rata. I do not think so. Though I am not of opinion, . that the transaction was actually covinous, yet the law avoids the sale as fraudulent, and treats the holder as executor de son tort. Now an executor de son tort can never retain. Moreover, the contracts of sale as between Byrd and Bright, or Byrd and Waller, are valid as between them. They are not avoided. Of course Byrd’s estate is not debtor for the advances, because those advances were made as the price of property, which Waller has received, and not as a loan, or as money paid for his use. If Byrd’s estate could be liable, it would only be because of the loss of those slaves. But they were not lost for any defect of title in him; and, therefore, his estate is not responsible. Whether the estate could be made liable on the ground of money paid for its use, provided there were funds to repay it, it is not necessary to decide. The question here relates only to the application of these funds. And considering it in this light, it is obvious, that if the payment of the debt to Anderson, out of the proceeds of this property, which Waller claims, is to be the ground of reclamation, then just in proportion as Waller becomes debtor of the estate, is the fund reduced out of which he expects payment. The proposition of course is inconsistent and not sustainable.
The decree is however deemed to be erroneous in this, that the chancellor has given interest upon the estimated conjectural hires of the slaves from the date of the first report, instead of hires from the date of the decree. According to the case of Baird v. Bland, 5 Munf. 492. interest is not to be allowed upon conjectural and unliquidated hires; for until they are ascertained, the party is in no default for not paying. Now, this reason applies in full force to the allowance of interest from the date of the report; since until it be confirmed by the decree of the court, the hires are still uncertain, conjectural and unliquidated. This emphatically appears in this case, in which the court has re *740 duced the estimate to less than one half of that made by the first report. The sum thus ascertained to be due, was, therefore never known, until the decree; and yet the chancellor has given back interest for many years on this unknown sura. This cannot be right upon the principles of Baird v. Bland. The decree must be reversed for this error, with costs.